**Opinion issued January 9, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NOS. 01-22-00697-CV & 01-22-00698-CV**

———————————

**D.G.W., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 2020-01788J & 2020-01789J**

**MEMORANDUM OPINION**

The trial court entered orders transferring D.G.W. to the Institutional Division of the Texas Department of Criminal Justice to serve out the remainder of two determinate-sentencing judgments there. On appeal, D.G.W. contends in a single issue that the trial court abused its discretion by transferring him. We affirm.

## BACKGROUND

In prior delinquency proceedings, D.G.W. pleaded "true" to two counts of aggravated robbery, stipulating that he used a deadly weapon, a firearm, to commit theft from two different victims on separate occasions and intentionally and knowingly threatened and placed his victims in fear of imminent bodily injury and death. *In re D.G.W.*, Nos. 01-21-00094-CV & 01-21-00134-CV, 2022 WL 2347738, at *1 (Tex. App.—Houston [1st Dist.] June 30, 2022, pet. denied) (mem. op.). The trial court adjudicated D.G.W., who was 16 years old when he committed the aggravated robberies at issue, delinquent and assessed determinate sentences of 12 years with the Texas Juvenile Justice Department accompanied by the possibility of transfer to the Texas Department of Criminal Justice once he became an adult. *Id.* On appeal, we affirmed the trial court's determinate-sentencing judgments. *Id.*

After D.G.W. turned 18 but before he turned 19, when the trial court would ordinarily consider whether to release him or transfer him to an adult prison to serve the rest of his determinate sentences, the trial court held an early transfer hearing due to disciplinary problems. Four witnesses testified. The State called Alanna Bennett to testify. D.G.W. called his mother, his case manager, and his brother to testify.

Bennett is a Texas Juvenile Justice Department court liaison. She testified as the representative for the Department, which requested an early transfer of D.G.W.

According to Bennett, D.G.W. engaged in "some destructive behavior" while in custody, "accumulating minor and major rule violations," and was admitted into "at least two behavior programs." D.G.W.'s behavior was problematic enough to result in his removal from his correctional therapy for "violent offender treatment." In addition, he was unable to attend treatment for alcohol and drug abuse due to his behavior. Both the violent-offender treatment and alcohol-and-drug-abuse treatment are mandatory programs he has to complete while in the Department's custody.

With respect to D.G.W.'s rules violations, he had "170 total incidents on record" between February 12, 2021, when he came into the Department's custody and June 29, 2022, when the trial court held the early transfer hearing. Most of D.G.W.'s rules violations were minor ones, and they most often consisted of "disrupting school activities, refusal to follow staff instructions, threatening others, refusal to participate in activities, possession of unauthorized items, vandalism, using profanity, loud and disruptive behavior and being in an undesignated area."

But ten of D.G.W.'s rules violations were classified as major. They included "assault of staff, unauthorized contact or bodily injury," as well as more than one incident involving indecent exposure, multiple incidents of masturbation, and extortion. Bennett testified that D.G.W. tried to touch staff with his penis, exposed his genitals to staff, and ejaculated in front staff. Due to his sexually aggressive

behavior, which is directed at female staff in particular, the Department placed him on a "female boundary plan," and female staff cannot be alone with him.

The Department took additional actions to address D.G.W.'s behavioral issues, including referral "for meetings with the youth services team, the behavior intensive intervention program," and "the redirect program." A psychiatrist evaluated D.G.W. to see if he needed medication. But no medication was prescribed as a result of this evaluation, and Bennett stated that none of the Department's additional actions were successful in altering D.G.W.'s behavior. Thus, the Department recommended that D.G.W. be transferred to the Texas Department of Criminal Justice to serve out the remainder of his determinate sentences.

In making this recommendation, Bennett also referred back to the two aggravated robberies for which D.G.W. had been adjudged delinquent. In those robberies, he had "lured the victims and instructed them to disrobe in order to embarrass" them. Bennett opined that his pattern of sexually aggressive behavior with the staff was similar in nature and intent, in that D.G.W. has said he behaves this way "just to get a rise out of the staff, just to embarrass staff and bother them."

Bennett further opined that the Department did not have viable treatment alternatives for D.G.W. On cross-examination, she conceded that departmental staff are trained in behavioral modification. But Bennett testified that D.G.W. had not been cooperative, noting that he refused the counseling that was provided to him. In

Bennett's opinion, D.G.W. "has no internal motivation to make any changes." Bennett acknowledged that there was one treatment program that had not been tried—the so-called Phoenix program, which is a "behavior modification program" that is reserved for those who have inflicted moderate to severe injury on another youth or staff. But Bennett did not think D.G.W. qualified for this program and stated that she "would not want to get to that point" with him at any rate, meaning that she did not wish to see his behavior escalate to the point he qualified for the program. She believed D.G.W.'s behavior was escalating. But given his failure to cooperate, she did not think D.G.W. was a candidate for further programs with the Department.

D.G.W.'s mother testified that she was concerned that sending her son to an adult prison would not "rehabilitate him at all." She stated that it is obvious that something is wrong with her son's mental health and that he needs treatment.

Christian Wall had been D.G.W.'s case manager for about a month at the time of trial. Through him, D.G.W. introduced several educational certificates into evidence. These certificates showed that D.G.W. had completed training for basic communication skills, basic employability skills, an introduction to hand tools, an introduction to construction drawings, and an introduction to material handling.

Wall testified that D.G.W. had shown some progress during the preceding month. Wall further testified that D.G.W. had been respectful while in his presence.

D.G.W.'s older brother, who was 21 years old at trial, testified last. He testified that he is close to D.G.W. and did not believe it would be in D.G.W.'s best interest to be transferred to an adult prison. He opined that "putting him in a place where there are people worse than him" would not help rehabilitate D.G.W. He further testified that he had seen a "huge change" in his brother's behavior during the last two to four months that D.G.W. had been in the Department's custody. In particular, he said D.G.W. now talks about religion and has employment goals.

After both sides rested, Oliver Sprott, who served as D.G.W.'s guardian ad litem, recommended that the trial court reject the Department's early-transfer request. Sprott noted that D.G.W.'s nineteenth birthday was about six months away and advocated he be given this additional period of time to show rehabilitation. Sprott opined that D.G.W. knows right from wrong and is capable of improving.

The trial court entered two orders—one as to each underlying delinquency adjudication—transferring D.G.W. to the Institutional Division of the Texas Department of Criminal Justice to serve out the rest of his determinate sentences.

## DISCUSSION

D.G.W. appeals from the trial court's transfer orders. He argues the trial court erred in transferring him early because he had begun to show progress toward rehabilitation and was eligible for an additional behavior-modification program—

6

the Phoenix program. Therefore, returning him to the Texas Juvenile Justice Department would have been more reasonable than early transfer to adult prison.

**Standard of Review**

We review a trial court's decision to transfer a juvenile from the Texas Juvenile Justice Department to the Institutional Division of the Texas Department of Criminal Justice for an abuse of discretion. *In re R.G.*, 994 S.W.2d 309, 312 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). In general, in this context, if some evidence supports the decision, there is no abuse of discretion. *Id.*; *accord In re C.D.T.*, 98 S.W.3d 280, 283 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

**Applicable Law**

At a transfer hearing, the trial court may consider written reports and documents from a variety of sources, including employees of the Texas Juvenile Justice Department and the juvenile's guardian ad litem. TEX. FAM. CODE § 54.11(d). In deciding whether to transfer, the trial court may also consider "the experiences and character of the person before and after commitment to the Texas Juvenile Justice Department or post-adjudication secure correctional facility, the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the Texas Juvenile Justice Department, county

7

juvenile board, local juvenile probation department, and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided." *Id.* § 54.11(k). But the trial court need not consider all these factors, and it may assign different weights to the factors it does consider. *In re R.G.*, 994 S.W.2d at 312.

**Analysis**

The question before us is whether some evidence supports the trial court's decision to transfer D.G.W. to the Texas Department of Criminal Justice. If some evidence supports its decision, then the trial court did not abuse its discretion.

Some evidence supports the trial court's decision. The penal offenses D.G.W. admitted committing—two counts of aggravated robbery—are serious ones. When he committed them, he used a firearm. D.G.W. also forced his victims to take off their clothes in an attempt to humiliate and degrade them. These serious offenses are some evidence supporting the trial court's transfer decision. *See, e.g.*, *id.* at 312–13 (relying in part on penal offenses that resulted in delinquency adjudication as some evidence supporting trial court's transfer decision).

After being adjudged delinquent based on the aggravated robberies and receiving two determinate sentences, D.G.W.'s conduct while in the Texas Juvenile Justice Department's custody has been deplorable. In less than a year and half, he has committed 170 rules violations. Multiple violations are sexually aggressive in nature, including indecent exposure, masturbation, and ejaculation before staff. The

8

trial court heard testimony that D.G.W. has intentionally and knowingly engaged in this conduct for the purpose of aggravating and embarrassing the staff, female staff in particular, with whom D.G.W. is no longer allowed to be alone as a result. D.G.W.'s conduct while in custody is some evidence supporting the trial court's transfer decision. *See, e.g.*, *In re C.D.T.*, 98 S.W.3d at 283 (relying on misconduct while in custody as some evidence supporting trial court's transfer decision).

Despite the preceding evidence, D.G.W. argues the trial court abused its discretion by transferring him to the Texas Department of Criminal Justice early because his behavior has shown recent improvement and there is at least one more alternative behavior-modification program for which he is eligible. Thus, D.G.W. maintains, it would have been more reasonable for the trial court to deny the request for early transfer and reassess his behavior in six months, when he would turn 19.

D.G.W.'s argument is incompatible with the applicable standard of review. D.G.W. does not truly contest that some evidence supports the trial court's decision; instead, he argues that this evidence is outweighed by other evidence. In other words, D.G.W. is making a factual-sufficiency argument. But we have rejected the notion that transfer decisions are reviewed for factual sufficiency. *See id.* (holding that transfer decisions are reviewed for abuse of discretion, not legal and factual sufficiency, and that trial court does not abuse its discretion so long as some evidence supports its transfer decision). The question is not whether the trial court made the

most reasonable decision but rather whether it was a reasonable one in the sense of having some basis in the evidence. *See In re R.G.*, 994 S.W.2d at 312 (noting that we may not reverse merely because we disagree with transfer decision, as long as decision is within trial court's discretionary authority).

In any event, even if we were to incorporate some form of factual sufficiency review in our evaluation of the trial court's exercise of its discretion, doing so here would not alter the outcome. The evidence of D.G.W.'s ostensible improvement was limited. The primary witness who testified about his improvement was Wall, who had only interacted with D.G.W. for a month before trial. Similarly, the educational certificates admitted into evidence had all been issued within a month or so of trial. The trial court, sitting as factfinder, could have reasonably discounted this evidence, which was recent and postdated the Department's request for early transfer, and placed more weight on the evidence of D.G.W.'s delinquency and concerning conduct in custody. *See id.* (stating trial court need not consider all factors and may place different weights on factors it considers in deciding whether to transfer); *see, e.g.*, *In re A.E.B.*, No. 01-19-00517-CV, 2021 WL 2931438, at *12 (Tex. App.— Houston [1st Dist.] July 13, 2021, pet. denied) (mem. op.) (observing that trial court was entitled to give greater weight to significant history of delinquency and delinquent conduct that led to juvenile commitment than successful completion of program for serious violent offenders while in custody).

Notably, D.G.W. did not put on any evidence that his most egregious behavior—his sexually aggressive conduct toward female staff—had improved. D.G.W.'s respectfulness to Wall—a male—is inapposite in this particular respect. And assuming for argument's sake that D.G.W. remained eligible for one as-yet-untried behavior-modification program, a fact which the Department disputes, the trial court heard testimony that D.G.W. had been uncooperative in prior treatment. Thus, the trial court could have reasonably found further efforts would be fruitless.

Based on this record, we hold the trial court did not abuse its discretion. *See, e.g.*, *In re R.G.*, 994 S.W.2d at 312–13 (holding trial court did not abuse discretion in transferring, notwithstanding evidence that juvenile had obtained G.E.D., successfully completed programs at facility, and improved in behavior over time).

## CONCLUSION

We affirm the trial court's orders transferring D.G.W. to the Institutional Division of the Texas Department of Criminal Justice.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.

11